FILED

2014 Jan-21  PM 12:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL BURNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-13-S-1620-NE** |
| | ) | |
| **THE HARVARD DRUG GROUP,** | ) | |
| **LLC, and AEROTEK, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael Burnett, filed a complaint on August 29, 2013, asserting claims against The Harvard Drug Group, LLC ("Harvard"), and Aerotek, Inc. ("Aerotek"), two entities that he claims were formerly his joint employers.[1]  His complaint asserted three claims against both defendants:  (1) "Race Discrimination Disparate Treatment" pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 (Count One); (2) "Race Discrimination Hostile Work Environment" pursuant to Title VII and 42 U.S.C. § 1981 (Count Two); and (3) "Race Discrimination Wrongful Termination" pursuant to Title VII and 42 U.S.C. § 1981 (Count Three).[2]  He also asserts one claim solely against defendant Aerotek:  *i.e.*, "Aerotek, Inc. Retaliation in Violation of Title

---

[1] Doc. no. 1 (Complaint).

[2] *Id.*

VII" (Count Four), and one claim solely against Harvard: *i.e.*, "The Harvard Drug Group, L.L.C. Negligent Hiring, Training, Supervision and Retention" (Count Five).[3] The case currently is before the court on "The Harvard Drug Group L.L.C.'s Partial Motion to Dismiss" Counts One and Five for failure to state a claim upon which relief can be granted.[4]  Upon consideration of the motion, pleadings, and briefs, the court concludes that Harvard's motion should be granted in part, but also denied in part.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  [*Twombly*,

---

[3] *Id.*

[4] Doc. no. 11 (Motion to Dismiss).

550 U.S., at 555].  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

3

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations.  *When there are well-pleaded factual allegations*, *a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis added).

## II. RELEVANT ALLEGATIONS OF PLAINTIFF'S COMPLAINT[5]

Plaintiff is a bi-racial male, being half Caucasian and half African American.[6] He was placed by Aerotek to work at Harvard's Decatur, Alabama facility on April 10, 2012.[7] Plaintiff alleges that Harvard and Aerotek were his "joint employers."[8]  When plaintiff first began working at Harvard, he claims that there were no problems because his co-workers perceived him as white due to the color of his skin.[9]  By the end of April of 2012, however, plaintiff's white co-workers discovered that he was bi-racial.[10]  Plaintiff alleges that, upon that discovery, the way in which he was treated

---

[5] All allegations of plaintiff's complaint have been taken as true for purposes of ruling on Harvard's motion to dismiss.

[6] Doc. no. 1 (Complaint) ¶ 6.

[7] *Id.* ¶ 7.  The complaint does not clearly explain this, but Aerotek apparently is either a temporary employment agency or a placement firm.  In any event, knowing Aerotek's exact role is not necessary to resolve the instant motion.

[8] *Id.*

[9] *Id.* ¶ 9.

[10] *Id.* ¶ 11.

4

immediately changed.[11]  Specifically, the majority of his white co-workers refused to talk to him and excluded him from conversations.[12]

Plaintiff's white co-workers showed him a list of about 29 people whose employment had been terminated, and all, or almost all, of those individuals were black.[13]  White co-workers joked and made racially derogatory comments on a daily basis, and parodied African Americans by talking in exaggerated accents which they called "ebonics."[14]  A white, male co-worker pretended to be a black woman, and the other workers laughed at that man's portrayal.[15]  A white co-worker remarked that other employees shouldn't ask anything of a black former co-worker named Shanna, because Shanna would slash their tires, and another white co-worker called a different black former co-worker by the nickname "She-na-na."[16]

When a new black employee began working at Harvard, the white employees joked about who would train her, and eventually asked plaintiff and the only other black employee to do that job because no one else wanted to.[17]

The white employees allegedly made derogatory and threatening comments

---

[11] *Id.* ¶¶ 12-13.

[12] *Id.* ¶ 13.

[13] Doc. no. 1 (Complaint) ¶ 10.

[14] *Id.* ¶ 14.

[15] *Id.* ¶ 34.

[16] *Id.* ¶ 15.

[17] *Id.* ¶ 17.

within plaintiff's hearing; however, they would not speak directly to him.[18]  For example, a white, male co-worker made the comment that, "it'll eat the ink off your arms," when plaintiff was the only individual in the room with visible tattoos on his arms.[19]

Additionally, once it became common knowledge that plaintiff was bi-racial, they ignored him or waited several minutes before responding whenever he asked his white co-workers for assistance.[20]  White co-workers would sometimes pretend to be members of the Ku Klux Klan, and state that they had a "meeting" that night.[21]

Upon arriving to work on May 7, 2012,[22] plaintiff allegedly witnessed a white, female co-worker run down the hallway and erase a picture on the white board that depicted plaintiff behind bars.[23]  Plaintiff understood this conduct to mean that his co-workers did not expect him at work that day.[24]  In fact, after plaintiff left Harvard's premises that day, Scott Urquhart from Aerotek called and informed plaintiff that his

---

[18] *Id.* ¶ 20.

[19] Doc. no. 1 (Complaint) ¶ 20.

[20] *Id.* ¶¶ 21-23.

[21] *Id.* ¶ 32.

[22] The complaint contains inconsistencies as to the date plaintiff's employment was terminated.  For the purposes of this motion to dismiss, the court will assume, however, that plaintiff was discharged on May 7, 2012, as this was the date provided in his EEOC charge and was also mentioned in the complaint.  *Compare* doc. no. 1 (Complaint) ¶ 24 *with* Complaint ¶ 30; *see also* doc. no. 1-1 (Charge of Discrimination).

[23] Doc. no. 1 (Complaint) ¶ 24.

[24] *Id.*

assignment was ending because he "didn't fit in."[25]

# III. DISCUSSION

## A.    Disparate Treatment Claim

Defendant asserts that plaintiff has failed to state sufficient facts to support his claim for disparate treatment discrimination (Count One).  To establish a *prima facie* case of race-based disparate treatment, a plaintiff generally must show that:  (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) the employer replaced him with someone outside his protected class or otherwise treated similarly situated employees outside his protected class more favorably, and (4) he was qualified to perform the duties of his job.  *See, e.g., Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002); *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).[26]

> "Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas prima facie* case, it must provide 'enough factual matter (taken as true) to suggest' intentional . . . discrimination."  *Davis v. Coca–Cola Bottling Co. Consol*., 516 F.3d 955, 974 (11th Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002), and *Twombly*, 127 S. Ct. at 1965).  In addition to containing well-pleaded factual allegations,

---

[25] *Id.* ¶ 25.

[26] The elements for a claim of discrimination are the same under both Title VII and § 1981. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

complaints must also meet the "plausibility standard" set forth in *Twombly* and *Iqbal*. *See Iqbal*, 129 S. Ct. at 1949–50.

*Bowers v. Board of Regents of University System of Georgia*, 509 F. App'x 906, 910 (11th Cir. 2013).

In addition to the factual allegations set forth above, plaintiff states the following to support his disparate treatment claim:

> 46.  Plaintiff has been discriminated against on the basis of race in regard to disparate treatment and other adverse terms and conditions of employment, in violation of Title VII of the Civil Rights Act, as amended, and 42 U.S.C. § 1981.  The plaintiff has been discriminated against because of his race and has been subjected to unequal treatment because of his race.

> 47.  Plaintiff seeks to redress the wrongs alleged herein and this suit for back pay plus damages, interest, an[d] injunctive and declaratory judgment are his only means of securing adequate relief.  Plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.[27]

The court concludes these allegations are sufficient to suggest intentional discrimination.  Accordingly, plaintiff's Count One will not be dismissed for failure to state a claim upon which relief can be granted.

**B.**   **Negligent Hiring, Training, Supervision, and Retention Claim**

In addition to the factual allegations set forth above, plaintiff stated the

---

[27] Doc. no. 1 (Complaint) ¶¶ 46-47 (alteration supplied).

following to support his claim for negligent hiring, training, supervision, and retention:

57.  This is a claim arising under the law of the State of Alabama to redress the Defendant's negligent hiring, retention, training and supervision of Chasity Davis, John Evans, and other employees.

58.  Defendant inadequately or completely failed to conduct background checks and/or references prior to hiring Chasity Davis, John Evans, and other employees, which proximately caused the discrimination, harassment and pretextual termination of the Plaintiff.

59.  Defendant inadequately or completely failed to provide race discrimination training.  The Defendant negligently failed to train Chasity Davis, John Evans, and other employees adequately on the subject of race discrimination, which proximately caused the discrimination, harassment and pretextual termination of the Plaintiff.

60.  The Defendant negligently failed to supervise Chasity Davis, John Evans, and other employees adequately, which proximately caused the discrimination, harassment and pretextual termination of the Plaintiff.

61.  The Defendant negligently failed to terminate Chasity Davis, John Evans, and others after receiving actual or constructive notice of their proclivity for discriminating against bi-racial and African American employees, which proximately caused their continued discrimination against the Plaintiff.

62.  Defendant failed to properly hire, train, supervise, and failed to terminate the employment of Chasity Davis, John Evans, and other supervisors and/or co-workers of Plaintiff who engaged in race discrimination.

63. The disparate treatment, harassment and pretextual termination of the Plaintiff caused him great emotional distress and trauma, for which

he seeks compensatory and punitive damages against the Defendant.[28]

Harvard argues that the claim must be dismissed because it is not based upon an independently actionable Alabama tort.  Persuasive authority from every federal district court in Alabama supports Harvard's argument.

First, in *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314 (N.D. Ala. 2002), this court granted summary judgment on a claim for negligent hiring, training, supervision, and retention based on similar allegations in the context of a pregnancy discrimination claim.  The court stated:

> In order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort.  *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999) (citing *Big B, Inc. v. Cottingham*, 634 So. 2d 999 (Ala. 1993)).  As Alabama does not recognize a common-law tort for sex discrimination in employment, the Court finds that Plaintiff cannot maintain an action for negligent supervision, training, and/or retention based upon conduct that is employment discrimination, but does not support a common-law tort.

*Thrasher*, 195 F. Supp. 2d at 1320 (footnote omitted).[29]

---

[28] Complaint ¶¶ 57-63.

[29] The omitted footnoted contained the following citations:

  *See Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 983 n. 1 ([Ala. ]2000)("It is well settled that Alabama does not recognize an independent cause of action for sexual harassment.  Instead, claims of sexual harassment are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage. *See, e.g., Ex parte Atmore Community Hosp.*, 719 So. 2d 1190 (Ala. 1998); *Mardis v. Robbins Tire & Rubber*

More recently, in *Rhodes v. Arc of Madison County, Inc.*, 920 F. Supp. 2d 1202 (N.D. Ala. 2013), this court made clear that the same principles apply to claims of sexual harassment, stating:

> "Alabama does not recognize an independent cause of action for sexual harassment." *Ex parte Carlisle*, 26 So. 3d 1202, 1204 n. 1 (Ala. 2009).  This state also does not recognize a claim for the tort of outrage by an employee who allegedly was "harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification." *American Road Service Co. v. Inmon*, 394 So. 2d 361, 367 (Ala. 1980).  Accordingly, defendant is likewise entitled to summary judgment on plaintiff's negligence claims because [the offending supervisor] is not accused of a tort.

*Rhodes,* 920 F. Supp. 2d at 1244 (alteration supplied).  Decisions from the Middle and Southern districts of Alabama are in agreement.  *See, e.g., Guy v. Alabama Power Co.*, No. 2:13cv8–MHT, 2013 WL 3929858, *2 (M.D. Ala. July 29, 2013) ("[I]t is clear that the employee's wrongdoing must be based on state, and not federal, law. Otherwise, the tort of negligent or wanton hiring, training, and supervision could be a corridor through which federal laws prohibiting various types of conduct by employees could be incorporated into state law as a privately redressable requirement

---

Co., 669 So. 2d 885 (Ala. 1995); *Big B, Inc. v. Cottingham*, 634 So. 2d 999 (Ala. 1993); *Potts v. BE & K Constr. Co.*, 604 So. 2d 398 (Ala. 1992)."); *see also Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 313 (Ala.1992) (refusing to "judicially create a wrongful discharge action" based on sex discrimination), *cert. denied*, 507 U.S. 1031, 113 S. Ct. 1849, 123 L. Ed.2d 473 (1993).

*Thrasher*, 195 F. Supp. 2d at 1320 n.3 (alteration supplied).

11

on employers to stop their employees from engaging in such conduct.") (alteration supplied); *Rabb v. Georgia Pacific, LLC*, No. CA 09–0420–C, 2010 WL 2985575, *16 (S.D. Ala. July 26, 2010) ("Because Alabama does not recognize a common-law tort for race discrimination in employment, this Court finds that Rabb cannot maintain an action for negligent supervision 'based upon conduct that is employment discrimination, but does not support a common-law tort.'") (quoting *Thrasher*, 195 F. Supp. 2d at 1320).

Here, plaintiff's claim for negligent hiring, training, supervision, and retention is based entirely on the same alleged conduct that supports his claims for race discrimination, hostile work environment, and retaliation under Title VII and 42 U.S.C. § 1981. Plaintiff does not allege any *independent* conduct that would support an Alabama tort law claim.[30] Accordingly, his negligent hiring, training, supervision,

---

[30] In his response brief, plaintiff appears to misunderstand the requirement that there be alleged conduct to support an *independently actionable* Alabama tort law claim. Plaintiff states:

> [Harvard] also claims Plaintiff's negligence claim may not rest upon a race discrimination claim. However, Plaintiff's negligent hiring, training, supervision and retention claim has factual allegations in support of the claim that meet the common-law Alabama tort, including that [Harvard] knew or should have known of the employee's incompetence, [Harvard] failed to prevent the incompetency through supervision which caused Plaintiff's injury, and the tort was committed by [Harvard] employees.

Doc. no. 15 (Response in Opposition), at 3 (alterations supplied). But the requirement is not simply that plaintiff plead sufficient facts to support the negligent hiring, training, supervision, and retention claim itself. Instead, plaintiff must plead sufficient facts to support an underlying tort claim upon which the negligent hiring, training, supervision, and retention claim is based. That is what he has failed to do.

and retention claim must be dismissed.

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, Harvard's motion for partial dismissal is GRANTED in part and DENIED in part.  Count Five of plaintiff's complaint is DISMISSED with prejudice, for failure to state a claim upon which relief can be granted.  Counts One, Two, Three, and Four remain pending, and defendants are ordered to file an answer to those claims on or before February 4, 2014.

DONE this 21st day of January, 2014.

_____
United States District Judge

13